UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
JOSEPH MANZI,                              :
                                           :
                        Plaintiff,         :
                                           :                    **OPINION AND ORDER**
            -against-                      :                    10-CV-3938 (DLI)(SMG)
                                           :
DAVEY TREE EXPERT COMPANY and              :
GARY MCBRIDE,                              :
                                           :
                        Defendants.        :
--------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

This action arises from a motor vehicle accident between Joseph Manzi ("Plaintiff") and

Gary McBride ("McBride"). Specifically, Plaintiff alleges that, on April 30, 2010, McBride

negligently collided into Plaintiff's vehicle and caused Plaintiff to sustain serious injuries within

the meaning of Section 5102(d) of the New York State Insurance Law (the "No-Fault Law").

Plaintiff seeks recovery from McBride and McBride's employer, Davey Tree Expert Company

("Davey Tree," and collectively with McBride, "Defendants"), with Davey Tree and McBride, in

turn, asserting cross-claims against each other for indemnification and contribution. (*See*

*generally* Am. Compl., Docket Entry No. 11; Answer, Docket Entry No. 12; Answer and Cross-

Cl., Docket Entry No. 14.) Defendants move for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure, seeking dismissal of the amended complaint and cross-claims

on the basis that Plaintiff has not sustained a serious injury as defined by Section 5102(d).

(Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Docket Entry No. 33-12;

Decl. in Supp. of Mot. for Summ. J., Docket Entry No. 33-18.) Plaintiff opposes. (Mem. of Law

in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem."), Docket Entry No. 33-17.) For the reasons

set forth below, Defendants' motion for summary judgment is granted and the action is

dismissed in its entirety with prejudice.

**BACKGROUND**

In responses to interrogatories, Plaintiff claimed he suffered the following injuries from the April 30, 2010 accident: (1) right knee injury, which included internal derangement and meniscal tear, requiring arthroscopic surgery; and (2) back and spinal injuries in the form of a herniated disc at L5-S1, protruding disc at C3-C4, and myofascial pain of the cervical and lumbar spine.[1] (Affirmation in Supp. Ex. E.) Summaries of the relevant medical records and Plaintiff's deposition testimony are further detailed below.

**I.      Relevant Medical Records**

On April 14, 2005, roughly five years before Plaintiff's accident with McBride, a car struck Plaintiff as he crossed a street intersection by foot. (Affirmation in Supp. Exs. T, U, W.) Plaintiff was thrown to the ground upon on impact; he was immediately taken from the scene to the emergency room by emergency medical services. (*Id.* Ex. U.) Medical records indicate that Plaintiff suffered a lumbar spine sprain and complained of persistent back pain, and had mild to moderate decrease in range of motion of his lumbar spine. (*Id.*)

On April 30, 2010, Plaintiff and McBride were involved in a motor vehicle accident near the intersection of 88th Street and Myrtle Avenue in Queens, New York. This time, however,

---

[1] Plaintiff's interrogatory responses also indicated that Plaintiff based his claim on post-concussion headaches and economic loss in excess of $50,000; however, his summary judgment submissions are entirely silent on those matters. The Court, therefore, deems Plaintiff to have abandoned any claim based on those theories. *See Avola v. Louisiana-Pacific Corp.*, 2013 WL 4647535, at *5 (E.D.N.Y. Aug. 28, 2013) (collecting cases and holding that "[p]laintiffs' failure to acknowledge, let alone address, the remaining five claims in opposing the Motion signals the abandonment of these claims"); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

Plaintiff did not seek medical treatment on the day of the accident, but instead went home to try to relax. (*Id.* Ex. G at 51.) Plaintiff first sought medical treatment on May 2, 2010, two days after the accident, at Forest Hills Hospital emergency room. (*Id.* Ex. M.) Medical records from that initial visit indicate that Plaintiff complained of pain in his neck, back, and left knee; the records, however, make no mention of pain or injury in his right knee. (*Id.*) Plaintiff was discharged from the emergency room that same day and prescribed Percocet. (*Id.*)

On May 10, 2010, Plaintiff visited Dynasty Medical Center, P.C. and was consulted by Dr. Ramkumar Panhani, whose notes from that day indicate that Plaintiff complained of headaches, neck pain, left shoulder pain, low back pain radiating into the left ankle, and left knee pain. (*Id.* Ex. N.) Dr. Panhani's notes also state that Plaintiff had tenderness in the lumbar spine on palpation, tenderness of the paravertebral muscles, positive straight leg raising at 60 degrees, and reduced flexion, extension and squatting. (*Id.*) The notes further state that Plaintiff had decreased range of motion and pain in the left knee; however, they make no mention of any issues with Plaintiff's right knee. (*Id.*) Dr. Panhani recommended that Plaintiff have an ultrasound of the cervical and lumbar spine, as well as an MRI scan of the brain, left knee, and left shoulder. (*Id.*)

On May 20, 2010, Plaintiff visited McGuire Medical P.C. and was examined by Dr. Lauretta Grzegorczyk. (*Id.* Ex. O.) Dr. Grzegorczyk's report indicates that Plaintiff's chief complaints were headaches, left neck and shoulder pain, lower back pain, and intermittent left knee pain. (*Id.*) This report, too, does not mention medical issues with Plaintiff's right knee. (*Id.*) Dr. Grzegorczyk indicated that Plaintiff had "moderate" restrictions on flexion, extension rotation, and side bending, and she diagnosed, *inter alia*, sprain in the cervical and lumbosacral muscles and ligaments and left knee sprain. (*Id.*) Dr. Grzegorczyk also recommended

supervised physical therapy three to four times a week, as well as x-rays of the shoulders and knees, and MRIs of the brain, cervical spine, and lumbar spine. (*Id.*) Dr. Grzegorczyk opined that "the prognosis of [Plaintiff's] condition in regard to a full and complete recovery is good, but is difficult to determine at this time. Additional diagnostic tests may be ordered to determine the full exten[t] of the injury, which will lead us to the final decision regarding this patient's prognosis." (*Id.*)

On May 24, 2010, Plaintiff had x-rays taken of his cervical spine, lumbosacral spine, left shoulder, and left knee. (*Id.* Ex. P.) According to Dr. Steve Losik, the x-rays of the lumbosacral spine, left shoulder, and left knee revealed no acute or displaced fractures or dislocations. (*Id.*) Additionally, Dr. Losik opined that the x-rays of the cervical spine showed no acute fractures of subluxations, but did show straightening of the cervical lordosis, which he indicated may represent pain and/or muscle spasm in an appropriate clinical setting. (*Id.*)

During May 2010 and June 2010, Plaintiff regularly attended physical therapy. (*Id.* Ex. O.) Records from Plaintiff's physical therapy sessions on May 21, 2010, May 22, 2010, and May 24, 2010 indicate that Plaintiff complained of pain in his left knee, lower back, and neck; however, there is no indication that Plaintiff complained of right knee pain in those sessions. (*Id.*) Notes from a later physical therapy session on May 26, 2010 indicate that Plaintiff complained, for the first time, of bilateral knee pain. (*Id.*)

On June 1, 2010, Plaintiff visited Dr. Winston Tapper and underwent an electromyography and nerve conduction velocity report on his lower extremities. (*Id.* Ex. Q.) Dr. Tapper interpreted the results of the test and opined that Plaintiff's lower extremities presented a "normal study," and that there was no evidence of radiculopathy or peripheral neuropathy. (*Id.*)

On June 17, 2010, Dr. Joseph Paul, an orthopedic surgeon, examined Plaintiff. (*Id.* Ex. R.) Dr. Paul's examination noted that Plaintiff complained of pain in the lower back and weakness of the right knee. (*Id.*) With respect to the lumbar spine, Dr. Paul diagnosed lumbar spine derangement and noted decreased range of motion, including forward bending of 55 degrees, out of a normal bending of 90 degrees. (*Id.*) Additionally, as to the right knee, Dr. Paul noted tenderness on palpation over the medial aspect and joint tenderness. (*Id.*) He also opined that an MRI of the right knee was compatible with a tear of the medial meniscus and recommended arthroscopic surgery. (*Id.*)

On July 21, 2010, Plaintiff had arthroscopic surgery on his right knee. (Affirmation in Opp'n Ex. C.) In a related pathology report, dated July 23, 2010, Dr. Mikaeil Kantius opined that the arthroscopic shaving from Plaintiff's right knee involved fragments of synovial lining consisting of "degenerative and inflammatory changes." (Affirmation in Supp. Ex. S.)

## II.     Plaintiff's Testimony

Plaintiff was deposed on May 16, 2011 and April 6, 2012. (*Id.* Exs. G, H.) In the May 16, 2011 deposition, Plaintiff testified that he was working, on a part-time basis, as a fireguard at Metro Fire Safety, the same position Plaintiff held prior to the accident. (*Id.* Ex. G at 10-11.) Plaintiff's duties as a fireguard consisted of making regular rounds and inspection, as well as filling out paperwork. (*Id.* at 10-12.) Plaintiff stated that he was absent from work from May 2010 until April 2011 due to the accident; however, Plaintiff admitted that no doctor had ever advised him that he should not work due to his injuries. (*Id.* at 13-15, 75.) Upon return to work in April 2011, Plaintiff's job duties and responsibilities remained the same. (*Id.* at 15-16.)

At the May 16, 2011 deposition, Plaintiff claimed that he experienced constant pain in his right knee, which required the use of a knee brace a few times a week, as well as constant back

and shoulder pain.  (*Id.* at 69, 79-82.)  Plaintiff also stated that, due to the accident, he could no longer exercise or play on his softball team, had difficulty going up and down stairs and dressing himself, and had trouble with lifting, squatting, and bending over.  (*Id.* at 75, 78-82.)  Plaintiff further indicated that he could no longer carry large grocery bags, and could only sit for fifteen to twenty minutes at a time.  (*Id.* at 80-82.)  Plaintiff stopped receiving medical treatment for his injuries sometime in October or November 2010.  (*Id.* at 78.)

At the April 6, 2012 deposition, Plaintiff stated that he currently worked part time as a sous chef at Riverside Manor, a restaurant in New Jersey.  (*Id.* Ex. H at 8, 10.)  Plaintiff also indicated that he was seeking full-time employment as a financial planner.  (*Id.* at 13-14.)

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted).  A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party

opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II.      No-Fault Law

New York's No-Fault Law was enacted "with the objective of promoting prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts." *Pommells v Perez*, 4 N.Y.3d 566, 570-71 (2005).   With respect to motions for summary judgment under the "serious injury" provisions of the No-Fault Law, the following burden-shifting scheme applies:

> on summary judgment, a defendant must establish a prima facie case that plaintiff did not sustain a "serious injury" within the meaning of Insurance Law § 5102(d). In support of its argument that there is no such serious injury, defendant may rely on the unsworn reports by plaintiff's physicians, but must provide evidence from its own physicians in the form of sworn affidavits.   Once a defendant's burden is met, the plaintiff is then required to establish a prima facie case that he sustained a serious injury.   For plaintiff to defeat a summary judgment motion, admissible evidence must be presented in the form of sworn affidavits by physicians.

*Yong Qin Luo v. Mikel*, 625 F.3d 772, 777 (2d Cir. 2010) (quoting *Barth v. Harris*, 2001 WL 736802, at *2 (S.D.N.Y. June 25, 2001)).

A plaintiff "must present objective proof of injury, as subjective complaints of pain will not, standing alone, support a claim for serious injury." *Id.* (quoting *Son v. Lockwood*, 2008 WL 5111287, at *5-6 (E.D.N.Y. Nov. 26, 2008)).   Additionally, "when additional contributory factors interrupt the chain of causation between the accident and claimed injury—such as a gap in treatment, an intervening medical problem or a preexisting condition—summary dismissal of the complaint may be appropriate." *Pommells*, 4 N.Y.3d at 572.

Under the No-Fault Law, a plaintiff is precluded from recovering for non-economic loss resulting from a motor vehicle accident unless the plaintiff has suffered a "serious injury," defined as:

> personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or

member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

As to "permanent consequential limitation of use of a body organ or member" or "significant limitation of use of a body function or system," the New York Court of Appeals has stated that "[w]hether a limitation of use or function is 'significant' or 'consequential' (*i.e.*, important) relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 353 (2002) (citation omitted); *see also Alvarez v. E. Penn Mfg. Co.*, 2012 WL 4094828, at *4 (S.D.N.Y. Sept. 17, 2012) ("The cases also commonly find that if a party raises a genuine dispute of material fact as to whether the injury is a 'permanent consequential limitation of use,' it will also have raised a genuine dispute of material fact as to whether the injury is a 'significant limitation of use.'")

And as to a "medically determined injury or impairment of a non-permanent nature which prevents the [plaintiff] from performing substantially all of the material acts which constitute [his] usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (the "90/180 day category"), "the words 'substantially all' should be construed to mean that the person has been curtailed from performing his usual activities to a great extent rather than some slight curtailment." *Licari v. Elliott*, 57 N.Y.2d 230, 236 (1982).

**III.   Application**

   A.   Right Knee Injury

To establish a prima facie case that Plaintiff did not sustain a serious injury to his right knee, Defendants rely primarily on Plaintiff's May 2010 medical records, two sworn reports of Dr. Lisa Nason, an orthopedic surgeon, and a sworn report of Dr. Mark Decker, an independent radiologist.  (Def.'s Mem. at 8-12.)

Specifically, Defendants emphasize that Plaintiff's own medical records show that he did not complain of right knee pain for approximately one month after the accident, even though Plaintiff had received treatment from several medical providers during that time.  Defendants note that Plaintiff made three initial trips to medical facilities following the accident—namely, Forest Hills Hospital on May 2, 2010, Dynasty Medical Center, P.C. on May 10, 2010, and McGuire Medical P.C. on May 20, 2010—and, in each of those visits, Plaintiff complained of *left* knee pain, not right knee pain.  (Affirmation in Supp. Exs. M, N, O.)  Similarly, records reveal that Plaintiff complained about left knee pain, not right knee pain, during his initial physical therapy sessions.  (*Id.* Ex. O.)  It was not until a May 26, 2010 physical therapy session—nearly a month after the accident—that complaints of "bilateral knee pain" were first documented.  (*Id.*)

Defendants' argument is further supported by the sworn reports of Dr. Nason, dated June 23, 2011 and September 24, 2012, who performed an independent orthopedic evaluation of Plaintiff and reviewed, among other things, Plaintiff's May 2010 and June 2010 medical and physical therapy records, MRIs of Plaintiff's right knee, and arthroscopic surgery records.  (*Id.* Exs. J, K.)  Dr. Nason opined that a causal relationship between the April 30, 2010 accident and Plaintiff's right knee could not be established in light of the medical records, which revealed that

Plaintiff first complained about right knee pain approximately one month after the accident occurred. (*Id.* Ex. K.) Furthermore, upon examination, Dr. Nason observed that Plaintiff: (1) walked with a normal gait, mounted and dismounted the examination table without difficulty, and was not using any supportive devices; (2) had no tenderness in the right knee to palpation along the medial or lateral ligaments or medial or lateral joint lines; and (3) had normal range of motion and extension in his right knee. (*Id.* Ex. J.) Dr. Nason also described Plaintiff's prognosis as "good" and "clinically healed," and concluded that there was no evidence of permanency or residual effects from the accident. (*Id.*)

Dr. Nason's report is consistent with the findings of Dr. Decker, who prepared a report, dated September 28, 2012, based on his review of the June 10, 2010 MRI of Plaintiff's right knee. (*Id.* Ex. L.) Among other things, Dr. Decker opined that the MRI of Plaintiff's right knee did not demonstrate that Plaintiff suffered from a meniscal tear or fracture. (*Id.*) Dr. Decker further noted that the MRI revealed patella alta with lateral subluxation and thickened medial plica, a condition that Dr. Decker considered to be longstanding and not causally related to the automobile accident. (*Id.*)

This evidence, taken together, is sufficient to establish a prima facie case that Plaintiff did not sustain a serious injury to his right knee causally related to the April 30, 2010 accident.

In response, Plaintiff relies primarily on a series of sworn reports from Dr. Harshad Bhatt, an orthopedic surgeon, dated June 28, 2010, July 21, 2010, July 28, 2010, and June 14, 2012. (Pl.'s Mem. at 4-10; Affirmation in Opp'n Exs. B-E.) In his June 28, 2010 report, Dr. Bhatt opined that Plaintiff was "partially disabled," with joint effusion, internal derangement, and medial meniscal tear in his right knee that necessitated arthroscopic surgery. (*Id.* Ex. B.) Dr. Bhatt further opined that "[a]ll of the [right-knee injuries] are causally related to the accident

of [4]/30/2010." (*Id.*)   In his June 14, 2012 report, Dr. Bhatt further noted that Plaintiff underwent arthroscopic surgery to his right knee on July 21, 2010, but that Plaintiff "had an uneventful recovery" and suffered from "moderate partial permanent disability." (*Id.* Ex. E.)

In addition to Dr. Bhatt's reports, Plaintiff also relies on a June 17, 2010 report from Dr. Joseph Paul, an orthopedic surgeon, in which Dr. Paul notes, "[Plaintiff] was involved in a motor vehicle accident on 04/30/10.   He was the driver.   He sustained injuries to his lumbar spine and right knee."   (Affirmation in Supp. Ex. R.)   In the report, Dr. Paul diagnosed internal derangement and medial meniscus tear in the right knee, and recommended arthroscopy. (*Id.*)

Plaintiff's evidence is insufficient to establish that Plaintiff's right knee injury is causally related to the April 30, 2010 accident.   Here, Dr. Bhatt opines, in conclusory fashion, that Plaintiff's right knee injury is "causally related" to the April 30, 2010 accident, but offers no explanation or rationale for that opinion.   Dr. Paul, too, simply appears to assume that the April 30, 2010 accident directly caused the right knee injury.   Yet Dr. Bhatt and Dr. Paul's reports provide no indication that their findings are based on a review of Plaintiff's complete medical records, as opposed to simply parroting what Plaintiff told them as to the cause of his right-knee injury.   Indeed, neither doctor explains or acknowledges the notable, if not incredible, month-long delay in the onset of Plaintiff's right knee pain.   As such, Dr. Bhatt and Dr. Paul's conclusory, unsupported findings do not provide a basis to defeat Defendants' motions for summary judgment. *See, e.g.*, *Cummins v. U.S. Xpress, Inc.*, 2009 WL 857401, at *4 (S.D.N.Y. Mar. 30, 2009) ("[I]n the absence of an explanation of the basis for concluding that the injury was caused by the subject accident, and not by other possible causes evidenced in the record, an expert's 'conclusion that plaintiff's condition is causally related to the subject accident is mere speculation' insufficient to support a finding that such a causal link exists.") quoting *Carter v.*

*Full Serv., Inc.*, 29 A.D.3d 342, 344 (1st Dep't 2006)); *Rhone v. United States*, 2007 WL 3340836, at *9 (S.D.N.Y. Nov. 9, 2007) (granting summary judgment for defendant where plaintiff's physician "state[d] that [plaintiff's] injuries [were] causally related to the December 2003 accident," but did not "explain what lead[] him to that finding and fail[ed] to consider the evidence of degeneration"); *Arenes v. Mercedes Benz Credit Corp.*, 2006 WL 1517756, at *8-9 (E.D.N.Y. June 1, 2006) (granting summary judgment in favor of defendants where plaintiffs "d[id] not explicitly address [physicians'] findings that plaintiffs' injuries [were] the result of a preexisting, degenerative condition").

For these reasons, Defendants are entitled to summary judgment as to Plaintiff's right-knee injury, and, therefore, the Court need not consider whether Plaintiff meets the serious injury threshold.[2]

B.    Spinal Injuries

In support of their motion for summary judgment as to Plaintiff's purported spinal injuries, Defendants rely primarily on Dr. Nason's June 23, 2011 and September 24, 2012 reports, as well as spinal x-rays from May 24, 2010 and a electromyography and nerve conduction velocity report from June 1, 2010.  (Def.'s Mem. at 12-17.)

As set forth in Dr. Nason's reports, in addition to personally examining Plaintiff, Dr. Nason considered, *inter alia*, May 2010 and June 2010 medical records detailing Plaintiff's treatment following the April 30, 2010 accident with McBride, as well as April 2005 and May 2005 medical records detailing Plaintiff's medical treatment for a prior automobile accident that

---

[2] *See Rhone*, 2007 WL 3340836, at *10 n.11 ("Consideration of whether [plaintiff] meets the serious injury threshold is rendered moot by the Court's decision on causation.  [Plaintiff's] failure to put forth any objective medical evidence demonstrating a causal link between the December 2003 accident and his alleged injuries makes any consideration of the seriousness of those injuries irrelevant.").

occurred April 14, 2005.  (Affirmation in Supp. Exs. J, K.)  In her reports, Dr. Nason noted that Plaintiff's cervical spine showed no structural abnormalities, no tenderness to palpation, normal range of motion for flexion, extension, bilateral bending and bilateral rotation, and a negative Forminal compression test.  (*Id.* Ex. J.)  Similarly, Dr. Nason found that Plaintiff's lumbar spine showed no tenderness to palpation, no spasms, normal range of motion for flexion, extension and bilateral bending, and negative results for straight leg raising and Lasegue's tests.  (*Id.*)  Dr. Nason opined that Plaintiff had suffered cervical and lumbar sprains, which had resolved with no evidence of permanency or residual effects, and she described Plaintiff's prognosis as "good." (*Id.*)  Dr. Nason further concluded that Plaintiff's lumbar spine sprain was "superimposed on a preexisting lumbar spine injury."  (*Id.*)

In addition to Dr. Nason's reports, Defendants also emphasize that the May 24, 2010 x-rays of Plaintiff's lumbosacral spine and cervical spine revealed no acute or displaced fractures, dislocations, or subluxations, and that the June 1, 2010 electromyography and nerve conduction velocity report confirmed that there was no neurological damage in Plaintiff's lower extremities. (*Id.* Exs. P, Q.)  Based on this evidence, Defendants have met their initial burden of showing that Plaintiff did not sustain a serious injury to his lumbosacral spine or cervical spine from the April 30, 2010 accident.

In opposing Defendants' motions, Plaintiff relies solely on the June 17, 2010 report of Dr. Paul, in which Dr. Paul diagnosed lumbar spine derangement and opined that Plaintiff suffered from decreased forward bending.  (Pl.'s Mem. at 4; Affirmation in Support Ex. R.)  For the reasons detailed below, however, Dr. Paul's report is insufficient to raise a genuine issue of triable fact under any of the potentially applicable definitions of "serious injury" set forth in Section 5102(d).

With respect to the 90/180 day category, Dr. Paul's report does not explicitly state whether Plaintiff had suffered spinal injuries that would be expected to, or did, in fact, last more than 90 days of the 180 days immediately following the accident.  Nor did Dr. Paul recommend that Plaintiff refrain from working or limit any of his daily and usual activities for any period of time.  Indeed, it is significant that Dr. Paul's report recommended further treatment and surgery for Plaintiff's right knee, but did not indicate that any further examination, treatment, or surgery would be necessary for Plaintiff's spinal condition.  *See Rogers v. McLamb*, 2006 WL 2734228, at *9 (S.D.N.Y. Sept. 22, 2006) (finding plaintiff failed to establish serious injury under 90/180 day category where there was "nothing in [the physician's] records indicating that plaintiff's ability to participate in her normal activities was hindered as a result of the injuries, or suggesting that she believed plaintiff should not return to work for an extended period"); *Ventura v. United States*, 121 F. Supp. 2d 326, 334 (S.D.N.Y. 2000) (finding plaintiff failed to establish serious injury under 90/180 day category where "treating physicians never recommended that she limit any of her activities").

Plaintiff also fails to establish that he suffered from a permanent or significant limitation in light of Dr. Paul's failure to describe with specificity the duration of Plaintiff's spinal injuries. *Gualtieri v. Farina*, 283 F. Supp. 2d 917, 925 (S.D.N.Y. 2003) ("The lack of any evidence that this limitation continued, beyond her subjective complaints of pain . . . necessitates the finding that plaintiff failed to meet the definition of serious injury with respect to the durational requirement [of a significant limitation].").  Moreover, although Dr. Paul opined that Plaintiff had decreased range in motion and lumbar spine derangement, he does not articulate the basis of his finding or otherwise indicate that the diagnosis is based on x-rays, MRIs or other forms of objective medical evidence.  *See Gay v. Cevallos*, 2011 WL 2015528, at *7 (S.D.N.Y. May 17,

2011) (finding evidence from plaintiff's physician insufficient to demonstrate significant or permanent limitation where physician concluded plaintiff's motion was restricted "without any explanation as to how he tested [p]laintiff's range of motion or any indication that his conclusion was based on objective medical tests"); *Rogers*, 2006 WL 2734228, at *6 (finding plaintiff failed to establish permanent limitation or significant limitation where plaintiff's physician "state[d] . . . that plaintiff suffered from a cervical disk herniation . . . [but] d[id] not state whether he examined plaintiff's MRIs and d[id] not state the basis for his conclusions").

Dr. Paul's opinion is further undermined by his failure to consider medical records from April and May 2005 related to Plaintiff's prior automobile accident and opine on whether Plaintiff's current injuries were superimposed on a preexisting lumbar spine injury from the prior accident. *See Evans v. United States*, 2013 WL 3967119, at *23 (E.D.N.Y. July 31, 2013) ("[T]o the extent that the Plaintiff is claiming that the January 6, 2010 accident aggravated asymptomatic pre-existing conditions, the Plaintiff is required to provide objective evidence that distinguishes aggravation of a pre-existing condition from the pre-existing condition itself."); *Ponce v. Magliulo*, 10 A.D. 3d 644 (2d Dep't 2004) (finding affirmation from plaintiff's physician insufficient where physician "failed to account for the plaintiff's medical history of neck and back injuries in a motor vehicle accident just one year before the instant accident").

Finally, Plaintiff's self-serving testimony—*i.e.*, that he missed nearly a year a work due to his injuries and remains unable to perform various physical activities due to spinal injury—cannot be relied on by Plaintiff to defeat Defendants' summary judgment motion in the absence of any objective medical evidence corroborating his testimony. *See Escoto v. United States*, 848 F. Supp. 2d 315, 330 (E.D.N.Y. 2012) ("The plaintiff's allegations that her injuries fell within the 90/180 day category must be substantiated by objective medical proof; self-serving

statements are insufficient."); *Rogers*, 2006 WL 2734228, at *9 ("[P]laintiff's absence from employment, without more, is insufficient to establish a serious injury under the 90/180 category."). Moreover, Plaintiff's admission that he has not sought treatment for his back and spine since October or November 2010, coupled with his failure to provide a reasonable explanation for the cessation of treatment, weighs in favor of granting Defendants' summary judgment motion. *See Evans*, 2013 WL 3967119, at *23 ("Where, as here, a plaintiff fails to provide a reasonable excuse for the cessation of treatment for a substantial time, past courts have considered this when finding that the plaintiff has failed to raise a triable issue as to a serious injury."); *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 605 (S.D.N.Y. 2004) ("The plaintiff's claim of serious injury is further undermined by the fact that there is a significant gap in his medical treatment that he has not adequately explained.").

In sum, because Plaintiff has failed to raise a triable issue of fact in opposition to Defendants' prima facie showing that Plaintiff has not suffered a serious injury to his back or spine within the meaning of Section 5102(d), Defendants' motions for summary judgment are granted.

## CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment are granted and the amended complaint and cross-claims are dismissed with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
        September 30, 2013

_____
            /s/
        DORA L. IRIZARRY
      United States District Judge
